UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE W. CARADINE, IV,                          Case No. 15-11880

        Plaintiff,                          Sean F. Cox
v.                                            United States District Judge

COMMISSIONER OF SOCIAL SECURITY,              Stephanie Dawkins Davis
                                              United States Magistrate Judge
        Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 17)

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On May 26, 2015, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Sean F. Cox referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income.  (Dkt. 4).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 13, 17).

    B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims for period of disability and disability

insurance benefits (DIB) and supplemental security income (SSI) on August 3, 2010, alleging that he became disabled on July 30, 2009. (Dkt. 11-2, Pg ID 53). The claims were initially disapproved by the Commissioner on December 15, 2010. *Id*. Plaintiff requested a hearing and on September 24, 2012, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Michael R. Dunn, who considered the case *de novo*. (Dkt. 11-2, Pg ID 69-102). In a decision dated August 23, 2011, the ALJ found that plaintiff was not disabled. (Dkt. 11-2, Pg ID 50-65). Plaintiff requested a review of this decision on September 1, 2011. (Dkt. 11-2, Pg ID 48-49). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on December 15, 2011, denied plaintiff's request for review. (Dkt.11-2, Pg ID 34-39); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

Plaintiff then filed suit in the United States District Court for the Eastern District of Michigan. *See* Case No. 12-10614 (E.D. Mich.). This Court remanded the matter for further proceedings. (Dkt. 11-10, Pg ID 517-546). The Appeals Council remanded the matter back to the ALJ. (Dkt. 11-10, Pg ID 547-548). The ALJ held a second hearing on March 11, 2014. (Dkt. 11-9, Pg ID 459-479). As he had returned to work, plaintiff amended his claim for a closed period from September 20, 2010 to November 16, 2011. (Dkt. 11-9, Pg ID 463). In a written decision dated June 11, 2014, the ALJ again determined that plaintiff was not

disabled.  (Dkt. 11-9, Pg ID 436-453).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff, born in 1975, was 35 years of age on the alleged disability onset date.  (Dkt. 11-9, Pg ID 452).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity during the closed period at issue.  *Id*. at 442.  At step two, the ALJ found that plaintiff's HIV infection, affective disorder/depression with history of substance abuse were "severe" within the meaning of the second sequential step. *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id*. at 444.

The ALJ determined that plaintiff had the following residual functional capacity ("RFC")

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as restricted by the following: the claimant is limited to

3

> occasional climbing of ropes/ladders/scaffolding,
> climbing of stairs/ramps, stooping, kneeling, crouching,
> and crawling; the claimant can frequently balance; the
> claimant is limited to simple, routine, and repetitive
> unskilled work tasks performed at SVP level 1 or 2 as
> defined in the Dictionary of Occupational Titles; work
> should be free of fast-paced production requirement and
> with few if any workplace changes; work should involve
> only simple work-related decision.

*Id*. at 449. At step four, the ALJ found that plaintiff was unable to perform his

past relevant work, given his RFC. *Id*. at 451. At step five, the ALJ denied

plaintiff benefits because he could perform a significant number of jobs available

in the national economy. *Id*. at 452.

   B.   Plaintiff's Claims of Error

   Plaintiff first argues that the RFC determination made by the ALJ did not

accurately portray his physical and mental impairments and nonexertional

limitations and the ALJ failed to follow this Court's remand order. The ALJ states

"the claimant's allegations of an inability to perform full time work during this

period as the result of HIV symptoms, anxiety/depression, and medication side

effects are inconsistent with the evidence in general." (Dkt. 11-9, Pg ID 450).

According to plaintiff, the "ALJ decision never states anything or contains any

analysis," "does not ever evaluate medication side effects of the specific

medications as directed by the U.S. District Court Order," "never evaluates the

medical evidence or the credibility evidence as directed by U.S. District Court

4

Order," and "states nothing, absolutely nothing except conclusory statements." (Dkt. 13, Pg ID 665-666).  Plaintiff further contends that the ALJ never mentions that at the first possible moment after his illness, plaintiff was able to return to work, which should be favorable factor in determining credibility.

Plaintiff contends that there is not a scintilla of evidence to support his RFC assessment that he was capable during the closed period of disability, of work at the light exertional level including work that requires lifting up to 20 pounds, standing, and walking, on a sustained basis.  According to plaintiff, the ALJ never factors or even attempts to factor plaintiff's severe fatigue, need to lie down, or severe medication side effects.  Rather, plaintiff asserts that the ALJ improperly found plaintiff not credible because he can go to his doctor appointments and can take public transportation.  (Dkt. 11-9, Pg ID 450-451).  Plaintiff contends that:

> The assessment of the ALJ is so far into left field that somehow the Plaintiff's full blown AIDS is not credible is beyond the pale; all because he attends his appointments and takes public transportation to those appointments.  The ALJ never states how he expects the Plaintiff to get to those doctor appointments. The whole decision is based on Plaintiff not being credible because he attends his appointments and takes public transportation to those appointments. The whole decision is a headache to read and try to understand the ALJ's logic. There are no logical conclusions or analysis reading this decision.  The Plaintiff attended his appointments and that is used by the ALJ to deny benefits? It is absolutely a senseless argument. The ALJ over and over again ignores the objective evidence and

> subjective complaints of Plaintiff based on the fact the
> Plaintiff goes to his scheduled appointments and takes
> public transportation to those appointments.

(Dkt. 13, Pg ID 666). Plaintiff maintains that the ALJ did not satisfy the narrative

discussion requirements of SSR 96-8p, failed to follow the District Court's prior

order, makes blanket statements about plaintiff, and fails to give any weight to the

medical reports or state any reasons for the weights given as required by law.

Plaintiff also contends that the ALJ's RFC fails to portray plaintiff's physical

impairments, or his mental impairments, and that work does not exist in significant

numbers that he can perform.

Plaintiff's second claim of error is that the ALJ did not properly evaluate his

severe impairment of AIDS. According to plaintiff, the ALJ completely failed to

properly assess plaintiff's impairment of AIDS under listing 14.08 as directed by

the District Court Order. Plaintiff says that the "ALJ never evaluates the totality

of the evidence and his decision consists of random facts with no context nor

analysis." (Dkt. 13, Pg ID 68). Plaintiff complains that the ALJ sought no

medical opinion even after the clear direction from the U.S. District Court.

Plaintiff points to two statements in the decision that he claims are without

any medical justification or context and which are "especially troubling for

plaintiff." (Dkt. 13, Pg ID 668). The first statement avers that plaintiff's

involuntary weight loss "may be the result" of drug use. (Dkt. 11-9, Pg ID 445).

According to plaintiff, this statement is without any context or medical opinion evidence to suggest it is factual; therefore, it is an abuse of discretion.  The second statement regarding what the ALJ considers "high risk" sexual activity indicates a bias against plaintiff that, if anything, demonstrates that plaintiff has a higher degree of limitation not less as the ALJ indicates in his decision.  (Dkt. 13, Pg ID 668, citing Dkt. 11-9, Pg ID 446).  Plaintiff represents that the ALJ does not point to one medical opinion or piece of medical evidence in the entire step three analyses.  He contends that the ALJ has a duty to explain why plaintiff does not meet the listing in a satisfactory manner and failed to do so.  Yet, according to plaintiff, the ALJ never states what evidence was credited in his review of the plaintiff's AIDS status or resulting infections.

Plaintiff maintains that the ALJ failed to properly evaluate the medical evidence in his conclusion that plaintiff did not meet or equal listing 14.08.  The ALJ never sought a medical opinion to determine whether plaintiff met the listing.  The ALJ acknowledges that during the closed period plaintiff suffered from candidiasis; rashes; syphilis; involuntary weight loss; severe fatigue; night sweats; and multiple skin infections. (Dkt. 11-9, Pg ID 444-446).  However, plaintiff argues that the ALJ treats each infection in a vacuum and never considers the entire illness.  The ALJ never mentions or evaluates listing 14.00 and never considers the combination of infections during the closed period.  Moreover, the

7

ALJ fails to properly evaluate listing 14.08K in that, while acknowledging that plaintiff had manifestations during the closed period, the ALJ concluded that plaintiff did not have marked limitations in one of the "Paragraph B" criteria. (Dkt. 11-9, Pg ID 446). Plaintiff disputes the findings of the ALJ that plaintiff did not have marked limitations of concentration, persistence, or pace. *Id*. All objective medical evidence demonstrates that plaintiff had marked limitations during the closed period.

    C.    <u>The Commissioner's Motion for Summary Judgment</u>

According to the Commissioner, the ALJ properly considered plaintiff's side effects and plaintiff is simply wrong that the ALJ's RFC finding "completely ignored" the part of the Remand Order directing him to evaluate the side effects arising from plaintiff's medications. As a threshold matter, the Commissioner notes that plaintiff has not accurately characterized the well-settled standard of review that applies to the instant case. Plaintiff asserts that courts "perform a higher level of judicial scrutiny in Social Security Disability and SSI cases than in any other kind of administrative review." (Dkt. 13). In support of this assertion, plaintiff cites *Sayers v. Gardner*, 380 F.2d 940 (6th Cir. 1967). According to the Commissioner, there is nothing in *Sayers* suggesting that courts should subject decisions issued by the Agency to "a higher level of judicial scrutiny" than that applied to decisions issued by any other agencies. Rather, *Sayers* repeatedly refers

8

generally to decisions of unspecified "agencies," in the plural.  *Sayers*, 380 F.2d at 942-43.

Contrary to plaintiff's assertions that the ALJ "completely ignored," "never discussed," and "does not ever evaluate" plaintiff's side effects, the Commissioner points out that the ALJ explicitly addressed plaintiff's side effects by making several specific findings regarding side effects, including weakness, fatigue, vertigo, cognitive problems, loose stools, muscle cramps, dry mouth, and headaches.  (Dkt. 17, Pg ID 690-692, citing Dkt. 11-9, Pg ID 450-451).  According to the Commissioner, plaintiff neither acknowledges nor disputes these findings.  Indeed, the Commissioner maintains that plaintiff does not even assert – let alone make any effort to sustain his burden of establishing – that his side effects gave rise to any specific functional limitations beyond those set forth in the highly restrictive RFC finding.

The Commissioner urges the Court to reject plaintiff's claim that the ALJ was "mak[ing] conclusions based on . . . his own biases."  (Pl's Mem. 11).  The Commissioner contends that such attacks are typically designed to distract attention from the weakness of their arguments on the merits.  *Fasburg v. Comm'r of Soc. Sec.*, 2014 WL 5035379, at *9 n.6 (W.D. Mich. 2014) (quoting *Bieschke v. Comm'r of Soc. Sec.*, 2009 WL 735077, at *8 W.D. Mich. 2009) (adopted by 2014 WL 5035379 (W.D. Mich. 2014)).  According to the Commissioner, it suffices to

observe that "this court must begin with the 'presumption that [adjudicators] exercise their power with honesty and integrity,'" and that this presumption "can be overcome only with convincing evidence," and cannot be rebutted "'based on speculation or inference,'" *Collier v. Comm'r of Soc. Sec.*, 108 Fed. Appx. 358, 363-64 (6th Cir. 2004) and plaintiff presents no evidence at all, let alone any "convincing evidence."

The Commissioner next points out that plaintiff mischaracterizes the ALJ's decision as issuing the exact same RFC evaluation, thus "demonstrating that he had no intention of following the U.S. District Court [Remand] Order" (Pl's Mem. 11). Rather, the RFC finding in the new decision limits plaintiff to only frequent (as opposed to constant) balancing and to only occasional climbing (including stairs and ramps), stooping, kneeling, crouching, and crawling. (Dkt. 11-9, Pg ID 449). The RFC finding in the earlier decision did not contain limitations in any of these areas. (Dkt. 11-2, Pg ID 58). According to the Commissioner, the ALJ explicitly stated in the newer decision that he added these new limitations to account for one of plaintiff's alleged side effects (i.e., fatigue). (Dkt. 11-9, Pg ID 451).

The Commissioner next contends that plaintiff's claim that the ALJ "never states what weight was given to any of the medical reports" about plaintiff's mental RFC is also inaccurate. Rather, the ALJ explicitly stated that he gave

"significant weight" to those opinions.  (Dkt. 11-9, Pg ID 448, 451).  More fully, Drs. Hampton-Aytch and Boneff both opined that plaintiff was limited to "simple" work (Dkt. 11-3, Pg ID 120; Dkt. 11-7, Pg ID 348), and Dr. Hampton-Aytch further opined that plaintiff was limited to "repetitive" work (Dkt. 11-3, Pg ID 120); the ALJ explicitly adopted those opinions in the RFC finding.  (Dkt. 11-9, Pg ID 449).

Lastly, the Commissioner urges the Court to reject plaintiff's argument that "[t]he ALJ does not evaluate Plaintiff's physical symptoms [of HIV] in relation to those described in 14.00[8] and does not articulate his reasons for finding that Plaintiff's symptoms do not meet or equal those criteria," that he "utterly failed" to "explain why the Plaintiff does not meet the [L]isting", that he "never states what evidence was credited", and he "never mentions or evaluates [L]isting 14.00."  *See* Dkt. 13.  Notably, a claimant bears the burden of establishing that he meets or equals a listing and in order to sustain this burden, claimants "must present medical findings equal in severity to *all* the criteria" for the pertinent Listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original), superseded by statute on other grounds.  Listing 14.08 contains 11 alternative subsections, which are designated A through K. With respect to each subsection, claimants must sustain their burden of establishing all the criteria by providing documentation "by laboratory evidence or other generally acceptable methods consistent with the

11

prevailing state of medical knowledge and clinical practice." *See* Listing 14.00F3.

According to the Commissioner, the ALJ explicitly addressed each subsection of Listing 14.08 and supportably found that plaintiff had not sustained his burden.  (Dkt. 17, Pg ID 698-701, citing Dkt. 11-9, Pg ID 444-446).  Plaintiff does not make any meaningful effort to sustain his burden of establishing that any of these findings is not supported by substantial evidence.  For present purposes, it therefore suffices to (a) adopt the ALJ's discussion of Listing 14.08 and (b) observe that plaintiff does not even argue – let alone make any effort to sustain his burden of establishing – that he meets all the criteria of any subsection of Listing 14.08.  The Commissioner suggests that the court's analysis of plaintiff's challenge to the ALJ's analysis of Listing 14.08 properly could end at this point, but the Commissioner also details how the ALJ specifically addressed Listing 14.08.

The Commissioner first notes that the ALJ's statements regarding plaintiff's substance abuse and his high risk sexual activity are entirely proper.  More fully, the ALJ stated that plaintiff's weight loss prior to the alleged onset date might have been caused by substance abuse because that would preclude plaintiff from establishing the criterion of Listing 14.08H which requires weight loss related to HIV wasting syndrome.  (Dkt. 11-9, Pg ID 445).  Additionally, the ALJ stated that plaintiff participated in high risk sexual activity because that was one of many

facts that precluded Plaintiff from establishing the criterion of Listing 14.08K1 requiring a "marked" limitation of activities of daily living.  (Dkt. 11-9, Pg ID 446).  According to the Commissioner, these two statements do not come within shouting distance of the convincing evidence" that plaintiff requires in order to sustain his burden of establishing that the ALJ was biased.

Next, while plaintiff indicates that he "disputes the findings of the ALJ that the Plaintiff did not have marked limitations of concentration, persistence, or pace" ("CPP") within the meaning of Listing 14.08K3 (Pl's Mem. 17, referring to Dkt. 11-9, Pg ID 447), the Commissioner asserts that plaintiff does not, however, make any effort to sustain his burden of establishing either that the ALJ's finding is not supported by substantial evidence or that plaintiff, in fact, meets all the criteria of Listing 14.08K.  Moreover, the Commissioner asserts that the finding is supported by substantial evidence because the State agency psychologist reviewed the evidence of record and opined that plaintiff had only moderate difficulties in maintaining CPP (Dkt. 11-3, Pg ID 118); Dr. Boneff examined plaintiff and opined that he retained a mental RFC that was not inconsistent with only moderate difficulties in CPP (Dkt. 11-7, Pg ID 348); and the ALJ asked a hypothetical question at the initial hearing that rested on the premise that plaintiff had only moderate difficulties in maintaining CPP.  (Dkt. 11-2, Pg ID 98).  Thus, the Commissioner asks the Court to conclude that the ALJ's listing analysis is

13

supported by substantial evidence.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case

14

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

    If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

16

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or

17

which has lasted or can be expected to last for a
continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five:  Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.     Analysis and Conclusions

1.     RFC and Credibility

Plaintiff's primary complaint regarding the ALJ's RFC focuses on the

assessment of plaintiff's side effects from medications and the ALJ's failure to

fully credit plaintiff's testimony.  Plaintiff contends that the ALJ simply failed to

address this issue.  Plaintiff is incorrect.  The ALJ plainly and clearly considered

all of plaintiff's claimed side effects and took them into account in formulating the

RFC as the Commissioner explains in great detail:

> (1) "With regard to the limiting effects of . . . *medication
> side effects*, in general [there are] inconsistencies
> between [Plaintiff's] allegations and the medical
> evidence of record . . . . [Plaintiff] displayed few
> consistent abnormalities beyond recurrent OHL[2]
> (which had disappeared as of March 2011 and did not
> return) and only sporadically reported to his treating
> sources the . . . *medication side effects* which he
> maintains were disabling during the period under
> consideration" (Dkt. 11-9, Pg ID 450 [emphasis added,
> parenthetical in original]).
>
> (2) Plaintiff "alleges experiencing daily *headaches*, due
> primarily to medication *side effects*, during [the
> pertinent] period but reported them to his physician on
> only one occasion in November 2010 (this is the only
> physician examination report amongst several which also
> shows that he reported *muscle cramps* and *dry mouth*)
> and did not thereafter list them as a problem when
> queried by his doctor; he received no extraordinary
> treatment for *headaches* or other medication *side effects*,
> but this is unsurprising given the infrequency with which
> he reported them" (Dkt. 11-9, Pg ID 450 [emphasis

added; parenthetical in original]).

(3) "At the hearing and in function reports (Ex. 4E, 6E), [Plaintiff reported] experiencing multiple loose stools per day. The medical evidence does not reflect this: [Plaintiff] reported recent onset of 1-2 *loose stools* per day, which he attributed to medication side effects, during the November 2011 examination by his physician; during prior examinations by his physician, he either reported no *loose stools* or explicitly denied experiencing *diarrhea* or other gastrointestinal symptoms. The sole report of *loose stools* in November 2011 does not suggest a pattern of 'chronic *diarrhea*'" (Dkt. 11-9, Pg ID 445 [emphasis added]).

(4) Plaintiff "mentioned *fatigue* in October 2010, November 2010, and March 2011, but explicitly denied experiencing it in September 2010 and November 2011; he never exhibited *muscle weakness* under examination. . . . Plaintiff "complain[ed] of fatigue (due to . . . medication side effects . . .) at least more than once during [the pertinent] period; it does not seem wholly unreasonable to conclude that particularly heavy exertion performed on a full[-]time basis would not have been possible for [Plaintiff] (at least without very frequent rest periods due to increasing *fatigue*). It is clear that he exhibited no serious *weakness* for lifting, and it is clear from the record as a whole that he was capable of walking and standing as necessary (. . . he was able to leave his home to participate in therapy, purchase substances, use public transportation, engage with others, etc.). He is limited to light exertional work in the above RFC as such. Also, in order to reduce the possibility of increasing *fatigue*, [Plaintiff] is limited to occasional postural activities in general, though with frequent balancing (there is no history of *vertigo*, *dizziness*, etc.)" (Dkt. 11-9, Pg ID 450-451 [emphasis added; parentheticals in original]).

21

(5) Plaintiff "never displayed serious *cognitive problems* due to . . . medication *side effects*, or any other cause, and he clearly retained the ability to perform simple mental tasks independently during the relevant period" (Dkt. 11-9, Pg ID 451 [emphasis added]).

(6) Plaintiff "did not exhibit significant *deficits in attention /concentration* when examined by his physician (who . . . explicitly indicated in more than one examination report that no such deficits were reported or observed); he exhibited some minor problems with calculation when examined by [Dr. Boneff], but that examiner concluded that [Plaintiff] retained the capacity at least for simple mental tasks[,] and this conclusion is reasonable given the other evidence and [Plaintiff's] obvious ability to perform various mental tasks independently" (Dkt. 11-9, Pg ID 450 [parenthetical in original]).

(7) Despite his reports of *social withdrawal*, [Plaintiff] . . . was quite capable of participating fully in rehabilitation classes with others and of leaving his home independently and engaging with others (for romantic purposes, for making purchases, etc.); he exhibited no social difficulties which would interfere with social interaction in the workplace" (Dkt. 11-9, Pg ID 450 [emphasis added, parenthetical in original]).

(8) "In short, [Plaintiff's] allegations of an inability to perform full[-]time work during [the pertinent] period as the result of . . . medication *side effects* are inconsistent with the evidence in general . . . . [Plaintiff's] allegations in this regard cannot be considered wholly credible based on the available evidence" (Dkt. 11-9, Pg ID 450).

In the view of the undersigned, the ALJ fully and thoroughly reviewed all of

plaintiff's claimed side effects and explained why they were not considered wholly

22

credible, and also modified the RFC from the earlier decision in order to accommodate plaintiff's fatigue. Indeed, the ALJ limited plaintiff further than the earlier decision by reducing plaintiff to only frequent (as opposed to constant) balancing and to only occasional climbing (including stairs and ramps), stooping, kneeling, crouching, and crawling. (Dkt. 11-9, Pg ID 449). Moreover, the ALJ explicitly adopted the opinions of Drs. Hampton-Aytch and Boneff, who both opined that plaintiff was limited to "simple" work (Dkt. 11-3, Pg ID 120; Dkt. 11-7, Pg ID 348), and Dr. Hampton-Aytch's opinion that plaintiff was limited also to "routine" and "repetitive" work. (Dkt. 11-3, Pg ID 120; Dkt. 11-9, Pg ID 449). Plaintiff points to no medical opinions or evidence suggesting that he was more limited than found by the ALJ. Thus, the ALJ's RFC is fully supported by substantial evidence in the record.

### 2.    Listing

First, plaintiff has wholly failed to offer any evidence to support his broad contention that the ALJ should have found at Step Three that his HIV satisfies the criteria of Listing 14.08. *See Roby v. Comm'r of Soc. Sec.*, 48 Fed. Appx. 532, 536 (6th Cir. 2002) ("The claimant has the burden at the third step of the sequential evaluation to establish that he meets or equals a listed impairment.") (internal citations omitted). Although plaintiff criticizes the ALJ for not providing enough detail in his discussion (which is entirely inaccurate), plaintiff does not

23

even attempt to explain why he believes his HIV meets or medically equals the criteria of Listing.  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specific medical criteria." *Sullivan v. Zebely*, 493 U.S. 521, 530 (1990) (emphasis in original).  Here, where plaintiff has failed to proffer any evidence that his HIV meets or medically equals the criteria of a listed impairment, and where substantial evidence supports the ALJ's determination that his HIV is not a severe impairment because plaintiff has been consistently diagnosed as asymptomatic and his condition stable, he has not shown that the ALJ erred.  *See Hudson v. Comm'r of Soc. Sec.*, 2013 WL 5372801, at *18 (E.D. Mich. Sept. 25, 2013) (noting plaintiff failed to put forth any evidence to show why the ALJ was wrong, or why she met any part of the 14.08 listing conditions).  Moreover, it is plainly evident from the ALJ's decision that he explicitly and thoroughly addressed each and every subsection of Listing 14.08 and found that the medical evidence in the record did not satisfy the Listing.  (Dkt. 11-9, Pg ID 444-446).  Thus, not only did plaintiff  fail to meet his burden that he satisfies List 14.08, the ALJ's analysis is well-supported by substantial evidence.

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the

Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may

25

rule without awaiting the response.

Date: August 19, 2016                      s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

        I certify that on August 19, 2016, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov